**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **GIORDANO HARDY-GERENA**, | |
| Plaintiff, | |
| v. | Case No. 25-cv-3510 (CRC) |
| **OP2 LABS, LLC**, d/b/a Frog Fuel, | |
| Defendant. | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Giordano Hardy-Gerena alleges that Defendant OP2 Labs, LLC, d/b/a Frog Fuel

("Frog Fuel"), violated the D.C. Consumer Protection Procedures Act ("DCCPPA") by falsely

advertising the protein content in one of its dietary supplement products.  Invoking the

DCCPPA's "private attorney general" provisions, Hardy-Gerena seeks damages, attorneys' fees,

and an injunction barring Frog Fuel from selling the product in the District of Columbia until it

corrects the product's label and marketing materials.  He filed this lawsuit in the Superior Court

of the District of Columbia, but Frog Fuel timely removed the case to this Court based on

diversity jurisdiction.  Hardy-Gerena now moves to remand the case, arguing that it must hop

back to the D.C. Superior Court pond because the amount-in-controversy requirement is not met.

Concurring, the Court will grant Hardy-Gerena's motion and remand the case.

### I.    Background

Frog Fuel sells Daily Recovery Protein, a "ready-to-drink dietary supplement."  Compl.

¶ 1; <u>see also</u> First Declaration of Alexander Kunz ("First Kunz Decl.") ¶ 4.  According to Hardy-

Gerena's complaint, Frog Fuel advertises that Daily Recovery Protein is "the most advanced

protein engineered to support rapid recovery of muscles and connective tissue" and "100%

digestible in <15min."  Compl. ¶¶ 1, 19.  The product's nutrition label states that it contains 15

grams of protein per serving and 22 amino acids.  Id.  Hardy-Gerena alleges that these claims are "misleading" because Daily Recovery Protein contains collagen protein, which "does not function or provide the same benefits as a 'complete' protein."  Id. ¶ 1.  He claims that unlike collagen protein, a "complete" protein has "all nine essential amino acids . . . that the body does not produce on its own and at levels at or above levels of reference standard."  Id.

Hardy-Gerena purchased Daily Recovery Protein and another Frog Fuel product from Amazon in June 2025.  Id. ¶ 23.  Through "third-party testing," he purportedly discovered that Daily Recovery Protein only contains 13.4 grams of protein per serving, not the 15 grams per serving that Frog Fuel advertised.  Id. ¶ 5.  Thus, Hardy-Gerena says, Frog Fuel's labeling and marketing materials are again "misleading."  Id. ¶ 7.

Accordingly, Hardy-Genera filed this lawsuit in D.C. Superior Court pursuant to the DCCPPA's private attorney general provisions.  See id. ¶ 26 (citing D.C. Code § 28–3905(k)(1)(B)).  He alleges that by advertising "an inaccurate amount of protein," Frog Fuel's sale of Daily Recovery Protein was "unfair" and deprived the public of the right to truthful information about consumer goods.  Id. ¶¶ 36–39.  His complaint seeks statutory damages, punitive damages, attorneys' fees, and an injunction barring Frog Fuel "from selling [Daily Recovery Protein] in the District of Columbia until its label and marketing materials give truthful information about the protein content[.]"  Id. ¶ 40.

After being served with a copy of the complaint, Frog Fuel removed the case pursuant to this Court's diversity jurisdiction.  See Notice of Removal ¶¶ 3–4 (citing 28 U.S.C. §§ 1332(a)(1), 1441(a)).  Frog Fuel submits that the parties are diverse and the amount-in-controversy requirement is satisfied because it would cost more than $500,000 to comply with the requested injunction.  See id. ¶¶ 12–16; First Kunz Decl. ¶¶ 6–11.  Hardy-Gerena now moves

2

to remand the case to the D.C. Superior Court, asserting that Frog Fuel's cost-of-compliance calculation violates the non-aggregation principle, which prohibits the aggregation of claims by multiple plaintiffs in assessing whether the amount-in-controversy requirement for diversity jurisdiction has been satisfied.  The motion to remand is fully briefed.

## II.    Legal Standards

A defendant generally may remove a case to federal court if it falls within the federal court's original jurisdiction.  See 28 U.S.C. § 1441(a); District of Columbia v. Exxon Mobil Corp., 89 F.4th 144, 148 (D.C. Cir. 2023).  If the plaintiff moves to remand the case, the removing party bears the burden of establishing the Court's jurisdiction.  Jenkins v. District of Columbia, 79 F. Supp. 3d 265, 267 (D.D.C. 2015) (Cooper, J.).  This Court "strictly construes removal status because of federalism concerns," and the Court "must resolve any ambiguities concerning the propriety of removal in favor of remand."  Johnson-Brown v. 2200 M St. LLC, 257 F. Supp. 2d 175, 177 (D.D.C. 2003); see also Witte v. Gen. Nutrition Corp., 104 F. Supp. 3d 1, 3 (D.D.C. 2015) ("[A]ny doubts about the existence of subject matter jurisdiction are to be resolved in favor of remand.").  "When it appears that a district court lacks subject matter jurisdiction over a case that has been removed from a state court, the district court must remand the case[.]"  Republic of Venezuela v. Philip Morris Inc., 287 F.3d 192, 196 (D.C. Cir. 2002) (citing 28 U.S.C. § 1447(c)).

## III.    Analysis

Hardy-Gerena asserts that the case must be remanded to D.C. Superior Court because this Court lacks subject matter jurisdiction.  Federal district courts have subject matter jurisdiction over a civil action if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a).  There

is no dispute that Hardy-Gerena and Frog Fuel are citizens of different states, see Compl. ¶¶ 13, 15; Notice of Removal ¶¶ 5–8, so the only remaining issue is whether the amount in controversy exceeds $75,000.

According to Frog Fuel, the amount in controversy "clearly exceeds" this jurisdictional threshold because the relief that Hardy-Gerena seeks—including statutory damages, attorneys' fees, and an injunction requiring Frog Fuel to repackage and relabel its inventory—would cost more than $500,000. Such an assertion "should be accepted when not contested by the plaintiff or questioned by the court." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 87 (2014). But since Hardy-Gerena disputes Frog Fuel's contention, removal is only proper if the Court finds by a preponderance of the evidence that the amount in controversy exceeds $75,000. See id. at 88 (citing 28 U.S.C. § 1446(c)(2)(B)). Both parties may submit evidence, including affidavits and declarations, to support their respective positions. See Gardner v. Erie Ins. Co., 639 F. Supp. 3d 135, 140 (D.D.C. 2022). As noted above, Frog Fuel bears the burden of establishing that the amount-in-controversy requirement is satisfied. See Organic Consumers Ass'n v. R.C. Bigelow, Inc., 314 F. Supp. 3d 344, 352 (D.D.C. 2018) (citation omitted).

To determine whether there is a sufficient amount in controversy, the Court will consider Hardy-Gerena's claims for statutory damages, injunctive relief, and attorneys' fees.[1] The Court

---

[1] Hardy-Gerena's complaint also seeks punitive damages. See Compl. ¶ 39. But "the mere *possibility* of a punitive damages award is insufficient to prove that the amount in controversy requirement has been met." Apton v. Volkswagen Grp. of Am., Inc., 233 F. Supp. 3d 4, 14 (D.D.C. 2017) (citation omitted). In any event, Frog Fuel has not explained—let alone demonstrated—why a punitive damages award in this case would be large enough to satisfy the amount-in-controversy requirement. See id. (declining to consider punitive damages when assessing the amount in controversy because the defendants did not show that punitive damages applied or would exceed the jurisdictional threshold); Breakman v. AOL LLC, 545 F. Supp. 2d 96, 106–07 (D.D.C. 2008) (applying the non-aggregation principle to a defendant's speculative claim that a "lump sum punitive damages award" would exceed $75,000).

assumes that the amounts sought for each form of relief should be added together.  See Zuckman

v. Monster Beverage Corp., 958 F. Supp. 2d 293, 297 (D.D.C. 2013).  If the total "is at or below

$75,000, the action lies outside the Court's diversity jurisdiction."  Id.

A.  Statutory Damages

Hardy-Gerena first seeks statutory damages on his own behalf "[a]s a result of [Frog

Fuel's] unfair and deceptive trade practice."  Compl. ¶¶ 12, 39.  A prevailing DCCPPA plaintiff

"may recover or obtain . . . [t]reble damages, or $1,500 per violation, whichever is greater[.]"

D.C. Code § 28–3905(k)(2)(A)(i).[2]  To be sure, parties occasionally dispute what constitutes a

"violation" under this provision.  See, e.g., Sloan v. Soul Circus, Inc., No. 15-cv-1389 (RC),

2015 WL 9272838, at *8 (D.D.C. Dec. 18, 2015) (acknowledging that "existing law is not

conclusive" but indicates that DCCPPA statutory damages flow from each purchase *made*

because of a deceptive advertisement rather than each instance in which the plaintiff *viewed* the

advertisement); Zuckman, 958 F. Supp. 2d at 299 (noting that the complaint was ambiguous as to

whether the plaintiff sought statutory damages for each instance in which he viewed the

allegedly-misleading advertisements).  But in this case, Frog Fuel asserts that Hardy-Gerena's

statutory damages would be $1,500 based on his one-time purchase of Daily Recovery Protein.

See Notice of Removal ¶ 17, Compl. ¶ 23.  Because Hardy-Gerena does not dispute this figure,

the Court will use it when calculating the amount in controversy.  Still, "more is needed to get

over the $75,000 hump."  Food & Water Watch v. Smithfield Foods, Inc., No. 21-cv-2065

(CRC), 2021 WL 8821537, at *2 (D.D.C. Dec. 6, 2021).

---

[2] Neither party claims that treble damages in this case would exceed $1,500.  Hardy-Gerena purchased a bundle of two Frog Fuel products for $43.20.  See Compl. ¶ 23.

B.  Injunctive Relief

Hardy-Gerena next seeks an injunction "on behalf of the general public" that would bar

Frog Fuel from selling Daily Recovery Protein in D.C. "until its label and marketing materials

give truthful information about [its] protein content[.]"  Compl. ¶ 40.  Frog Fuel insists that it

would cost over $500,000 to repackage and relabel its inventory of Daily Recovery Protein, so

the amount in controversy plainly exceeds $75,000.  See Notice of Removal ¶¶ 12–16, 19; Def.'s

Opp'n to Pl.'s Mot. to Remand for Lack of Subject Matter Jurisdiction ("Opp'n") at 5–7, 10–11.

To resolve Hardy-Gerena's motion to remand, the Court assumes that (1) the cost of complying

with the requested injunctive relief may be considered when assessing the amount in

controversy, see R.C. Bigelow, 314 F. Supp. 3d at 348–49, and (2) Frog Fuel accurately

estimates the cost of compliance, see Pl.'s Mot. to Remand for Lack of Subject Matter

Jurisdiction ("Mot. to Remand") at 4 (asserting that the amount in controversy is not met "[e]ven

if" the Court accepts Frog Fuel's calculations).  "The Court makes those assumptions because,

even drawing such inferences in favor of [Frog Fuel], the amount-in-controversy requirement has

nonetheless not been met here."  Earth Island Inst. v. BlueTriton Brands, 583 F. Supp. 3d 105,

109 (D.D.C. 2022).

As Hardy-Gerena correctly notes, Frog Fuel's notice of removal "ignores the non-

aggregation principle entirely[.]"  Mot. to Remand at 5.  Under that principle, a party may not

aggregate "separate and distinct claims of two or more plaintiffs . . . in order to satisfy the

jurisdictional amount requirement" under 28 U.S.C. § 1332(a).  Earth Island Inst., 583 F. Supp.

3d at 109 (quoting Snyder v. Harris, 394 U.S. 332, 335 (1969)).  In actions brought under the

DCCPPA's private attorney general provisions, the "plaintiff and the members of the public he

represents have separate and distinct claims for relief[.]"  Witte, 104 F. Supp. 3d at 6 (citing

Nat'l Consumers League v. Flowers Bakeries, LLC, 36 F. Supp. 3d 26, 32 (D.D.C. 2014)).  So when a plaintiff seeks injunctive relief on behalf of himself *and* the general public, courts in this district have routinely applied the non-aggregation principle.  See, e.g., Earth Island Inst., 583 F. Supp. 3d at 109–10 (collecting cases); Toxin Free USA v. J.M. Smucker Co., 507 F. Supp. 3d 40, 45 (D.D.C. 2020) ("Courts in this district have consistently held that defendants removing DCCPPA actions 'cannot rely on the total cost of compliance with the plaintiff's requested injunction to establish the amount-in-controversy" requirement of § 1332(a).'" (citation omitted)); Smith v. Abbott Lab'ys, Inc., No. 16-cv-501 (RJL), 2017 WL 3670194, at *2 (D.D.C. Mar. 31, 2017) ("[T]he overwhelming weight of authority within the District indicates that defendants seeking to remove [DCCPPA] actions cannot rely on the total cost of compliance with the plaintiff's requested injunction to establish the amount-in-controversy[.]").  Put another way, "the cost of compliance that a court should consider when determining the amount in controversy is the total amount divided among the beneficiaries of the injunction."  Animal Legal Def. Fund v. Hormel Foods Corp., 249 F. Supp. 3d 53, 60 (D.D.C. 2017).

While Frog Fuel's cost of compliance with the requested injunction may well exceed $500,000 *in total*, the relevant question is Frog Fuel's cost of compliance *per D.C. consumer*. See Earth Island Inst., 583 F. Supp. 3d at 110 (citing Inst. for Truth in Mktg. v. Total Health Network Corp., 321 F. Supp. 3d 76, 91 (D.D.C. 2018)).  Frog Fuel "does not even attempt" to make this showing.  Id.  It does not identify the number of Daily Recovery Protein consumers in the District.  Nor does it provide data that would allow the Court to *estimate* the number of consumers.  And, as Hardy-Gerena correctly points out, "there would need to be [fewer] than eight consumers of [Daily Recovery Protein] in the District of Columbia in order for [Frog Fuel]

7

to reach the required amount in controversy of $75,000." Mot. to Remand at 6.[3]  In short, Frog

Fuel has not carried its burden of demonstrating "that the cost of the injunction divided pro rata

among the members of the general public of Washington, D.C. would exceed the jurisdictional

threshold." Toxin Free USA, 507 F. Supp. 3d at 46 (quoting Animal Legal Def. Fund, 249 F.

Supp. 3d at 60–61).

Instead of engaging with the myriad cases applying the non-aggregation principle to

DCCPPA actions, Frog Fuel tries to swim against the current.  It accuses Hardy-Gerena of

engaging in "artful pleading" by "deliberately styl[ing] his complaint to obscure the true scope of

his claims and avoid federal jurisdiction." Opp'n at 5; see also id. at 6 (describing Hardy-

Gerena's invocation of the DCCPPA's private attorney general provisions as a "strategic

pleading tactic"), 7 ("[Hardy-Gerena] must not be permitted to hide from the fact that any

injunction issued in this Action would have consequences well beyond D.C.").[4]  Rhetorical

flourishes aside, Frog Fuel does not cite *any* case law suggesting that a plaintiff cannot

"maneuver himself away from federal jurisdiction" by seeking injunctive relief on behalf of the

---

[3] The data that Frog Fuel *does* provide cuts against its own argument.  In opposing Hardy-Gerena's motion to remand, Frog Fuel asserts that it sold approximately $14 million of Daily Recovery Protein in the United States in 2024.  See Opp'n at 7; Second Declaration of Alexander Kunz ¶¶ 4–5.  It then claims that $28,128.61 (i.e., 0.2 percent of total sales) is "attributable to D.C. consumers," presumably because D.C. has approximately 0.2 percent of the U.S. population.  Even if the Court accepts this estimate, it strongly suggests that there are far *more* than eight consumers of Daily Recovery Protein in the District.  Accordingly, the cost of compliance per D.C. consumer would be significantly *less* than the $75,000 threshold.

[4] As evidence that Hardy-Gerena is "deliberately misleading" the Court about the impact of his proposed injunction, Frog Fuel notes that his attorneys are "prepar[ing] to represent *another* plaintiff in a class-action lawsuit in California" based on its claims about Daily Recovery Protein.  Opp'n at 6; see Second Declaration of Alexander Kunz, Ex. A.  It is unclear how a different plaintiff's pre-suit notice regarding a proposed class-action lawsuit in California has anything to do with whether Frog Fuel has demonstrated that the amount in controversy in *this* case exceeds $75,000.

general public.  Id. at 6.  Instead, the requested injunction appears to be "a straightforward invocation of [Hardy-Gerena's] rights to seek relief under the DCCPPA."  Reply in Supp. of Pl.'s Mot. to Remand at 4; see D.C. Code § 28–3905(k)(1)(B) (providing that an individual may bring an action under the DCCPPA "on behalf of *both* the individual and the general public" (emphasis added)); Int'l Rts. Advocs. v. Mars, Inc., No. 24-cv-894 (RCL), 2025 WL 819580, at *5 (D.D.C. Mar. 13, 2025) ("A plaintiff's choice to invoke [the DCCPPA's private attorney general] provision, and thus bring about its attendant jurisdictional consequences, is not some random accident of fate or act of nature; it is the exercise of a right conferred by representative democratic processes, of the sort that courts must ordinarily respect.").

Because Frog Fuel has not shown that the cost of repacking and relabeling its inventory of Daily Recovery Protein would exceed $75,000 per D.C. consumer, it has not established that diversity jurisdiction exists based on the requested injunctive relief.  See Organic Consumers Ass'n v. Handsome Brook Farm Grp. 2, LLC, 222 F. Supp. 3d 74, 78 (D.D.C. 2016) (Cooper, J.).

C. Attorneys' Fees

Hardy-Gerena's complaint also seeks "reasonable attorneys' fees."  Compl. ¶¶ 39–40. Frog Fuel asserts that this request alone satisfies the amount-in-controversy requirement because, in its estimation, the expected fees in this case would exceed $1.3 million.  See Opp'n at 8–10. This is too thin a lily pad to stand on.

First, Frog Fuel's argument is premised on its assertion that "the entire amount of attorneys' fees and costs" should be "attributed solely" to Hardy-Genera.  Id. at 8.  In its view, the non-aggregation principle is inapplicable because Hardy-Genera's attorneys are "not doing any additional work on behalf of the general public that [they are] not already doing for [him]."

Id.  Frog Fuel does not cite any case law for this proposition, perhaps because this Court and several others in the district have routinely rejected similar arguments in DCCPPA cases.  See, e.g., Nat'l Consumers League v. Starbucks Corp., No. 24-cv-421 (AHA), 2025 WL 315141, at *3 (D.D.C. Jan. 28, 2025) ("[C]ourts have explained that it is error to aggregate attorneys' fees in [DCCPPA] cases brought on behalf of the general public."); Food & Water Watch, 2021 WL 8821537, at *3 ("Many courts in this district have applied [the non-aggregation] principle in DCCPPA cases seeking relief on behalf of the general public[.]"); Zuckman, 958 F. Supp. 2d at 301 ("[T]he Court may consider only [the plaintiff's] share of the total fees when calculating the amount in controversy."); Nat'l Consumers League v. Gen. Mills, Inc., 680 F. Supp. 2d 132, 141 (D.D.C. 2010) ("[L]ike aggregation of damages, aggregation of attorneys' fees is not appropriate in a [DCCPPA] case."); Breakman, 545 F. Supp. 2d at 107 ("[A]ttorneys' fees should be apportioned among all of the consumer plaintiffs.").  Here too, Frog Fuel's argument wilts in the face of consensus.

Second, even if the Court attributed the attorneys' fees in this case to Hardy-Gerena alone (and ignored the non-aggregation principle), Frog Fuel's estimation of $1.3 million in fees is "too speculative."  Animal Legal Def. Fund, 249 F. Supp. 3d at 63.  To arrive at this figure, Frog Fuel cites the Laffey matrix and fee awards in three DCCPPA cases.  See Opp'n at 8–9.  But this "cobbling together" of billing rates and hours expended in other cases is simply "not helpful to the Court."  Animal Legal Def. Fund, 249 F. Supp. 3d at 63.  Again, "[n]umerous courts have held that a defendant's conjecture regarding the possible amount of fees is inadequate to support an assertion of diversity jurisdiction."  Breakman, 545 F. Supp. 2d at 107 (citation and internal quotation marks omitted); see also Clean Label Project Found. v. Now Health Grp., Inc., No. 21-cv-11 (JDB), 2021 WL 2809106, at *7 (D.D.C. July 6, 2021) (concluding that "[a] citation to the

fee award in one prior DCCPPA case" and a "conclusory assertion" that the plaintiff's litigation expenses would exceed $75,000 "is too speculative to form a sufficient basis for establishing diversity jurisdiction"); <u>Animal Legal Def. Fund</u>, 249 F. Supp. 3d at 63 ("Conclusory assertions and rhetoric are not sufficient to satisfy Defendant's burden to establish the amount in controversy[.]"); <u>Gen. Mills</u>, 680 F. Supp. 2d at 140 (noting that the defendant's "conservative estimate" of attorneys' fees amounted to "conclusory guesswork").

Because Frog Fuel's argument regarding attorneys' fees is "speculative," and any fees would be "apportioned among all of the consumer plaintiffs," they "do not factor in to the amount in controversy required for diversity jurisdiction." <u>Breakman</u>, 545 F. Supp. 2d at 107–08.[5] Accordingly, Frog Fuel has failed to carry its burden of establishing this Court's subject matter jurisdiction.

---

[5] In any event, courts in this district are "not entirely comfortable with the premise that an action should be retained in federal court where satisfaction of the amount in controversy requirement depends upon a lump sum award of attorneys' fees." <u>Breakman</u>, 545 F. Supp. 2d at 107; <u>see also</u> <u>R.C. Bigelow, Inc.</u>, 314 F. Supp. at 354 (same); <u>Food & Water Watch</u>, 2021 WL 8821537, at *3 (noting that "[a] long line of cases forecloses th[e] tactic of "lean[ing] on attorneys' fees to push the amount in controversy over the $75,000 threshold").

## IV.   Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [6] Plaintiff's Motion to Remand for Lack of Subject Matter

Jurisdiction is GRANTED.  It is further

**ORDERED** that the Clerk of the Court remand the above-captioned matter to the

Superior Court of the District of Columbia.

**SO ORDERED**.

 

CHRISTOPHER R. COOPER
United States District Judge

Date:  May 29, 2026